PEOPLE *v.* KRUPER.

1. COURTS—MOOT QUESTION—TEMPORARY LOSS OF STENOGRAPHER'S NOTES.

Defendants' questions as to alleged deprivation of constitutional rights of due process and equal protection of law because court stenographer mislaid his notes as to direct examination and part of cross-examination of complaining witness in prosecution for extortion and robbery unarmed became moot when supplemental record containing the missing testimony was filed and disclosed that the temporary loss of such testimony did not deprive defendants of their substantive rights (US Const, Am 14; Mich Const 1908, art 2, §§ 1, 16).

2. APPEAL AND ERROR—SETTLEMENT OF RECORD—QUESTIONS REVIEWABLE.

The Supreme Court was precluded from passing upon delinquency of appellant in failing to get record on appeal settled within time provided by court rule, where appellee did not raise objection thereto (Court Rule No 66, § 2; No 67, § 1 [1945]).

3. CRIMINAL LAW—EXTORTION—ROBBERY UNARMED—ELECTION BETWEEN COUNTS.

The crimes of extortion and robbery unarmed are not completely inconsistent in the eyes of the law, hence, the people in a prosecution under an information, containing a count as to each crime, are not required to elect under which count they should proceed (CL 1948, §§ 750.213, 750.530).

4. ROBBERY—ELEMENTS—EXTORTION.

A threat to do injury to the person or property of the complaining witness or to any of certain near relatives when accompanied by force, actual or constructive, and property or money is given up in consequence of that force can constitute robbery, irrespective of how slight the force or the cause creating fear may be, provided, in the light of the circumstances, the party robbed has a reasonable belief that he may suffer injury unless he complies with the demand (CL 1948, §§ 750.213, 750.530).

REFERENCES FOR POINTS IN HEADNOTES

[3, 5]  27 Am Jur, Indictments and Informations § 133.
[4]  46 Am Jur, Robbery § 5 *et seq.*
[6]  53 Am Jur, Trial § 840.
[8, 9]  58 Am Jur, Witnesses § 676.
[10]  39 Am Jur, New Trial § 139.

5. INDICTMENT AND INFORMATION—ELECTION BETWEEN COUNTS—EVIDENCE—PREJUDICE.

The people ought not to be compelled to elect between counts of an information charging several offenses which are distinct in point of law but spring out of substantially the same transaction, or, are so connected in their facts as to make them substantially parts of the same transaction, or connected series of facts, as the defendant cannot be prejudiced in his defense by the joinder.

6. CRIMINAL LAW—INSTRUCTIONS—EXTORTION—ROBBERY UNARMED.

Defendants in prosecution under information charging crimes of extortion and robbery unarmed were not prejudiced by instruction to jury that it could bring in a verdict of guilty on both counts, where jury did not return a general verdict nor one of guilty on each count but only one of guilty on count charging extortion, both crimes having been provable by the same testimony and only 1 time, 1 place and 1 transaction were involved (CL 1948, §§ 750.213, 750.530).

7. SAME—EXTORTION—ROBBERY UNARMED—INSTRUCTIONS.

Charge to jury in prosecution for extortion and robbery unarmed, in which the information was read to the jury as well as the applicable statutes was fair and sufficiently comprehensive and not open to contentions that charge failed to apprise the jury of the basic elements of the offenses charged (CL 1948, §§ 750.213, 750.530).

8. SAME — CROSS-EXAMINATION — IMPEACHMENT — DISCRETION OF COURT.

The scope of cross-examination in a criminal case when the attempt is made to impeach a witness, is a matter of discretion.

9. SAME—CROSS-EXAMINATION—RESTRICTION.

Defendants in prosecution for extortion and robbery unarmed *held,* not to have been unduly restricted in the cross-examination of witnesses for the people; hence, there was no abuse of discretion in such respect.

10. SAME—NEW TRIAL—EXTORTION—EVIDENCE.

Denial of motion for new trial in prosecution for extortion and robbery unarmed was proper, where the verdict was not against the great weight of the evidence and there is ample testimony in the record to support jury's verdict of guilty of extortion (CL 1948, §§ 750.213, 750.530).

Appeal from Recorder's Court of Detroit; Ide (O. Z.), J. Submitted April 15, 1954. (Docket No. 67, Calendar No. 45,302.) Decided June 7, 1954. Rehearing denied September 8, 1954.

Henry Kruper and Ignatius Sadak were convicted of extortion. Affirmed.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, *Samuel Brezner* and *Samuel J. Torina,* Assistant Prosecuting Attorneys, for plaintiff.

*William Cohen,* for defendants.

BUSHNELL, J. Defendants Henry Kruper and Ignatius Sadak were granted leave to appeal from sentences imposed after they were found guilty of the crime of extortion. Defendants were tried jointly before a jury on an information containing counts of extortion and robbery unarmed.

The pertinent parts of the information are as follows:

"That Ignatius Sadak and Henry Kruper, late of the said city of Detroit, in said county, heretofore, to-wit, on the 20th day of August, A.D. 1949, at the said city of Detroit, in the county aforesaid did then and here orally maliciously threaten one Henry J. Druzynski and harm to the wife and child of said Henry J. Druzynski, with intent thereby to extort money, which said threat was then and there in words as follows: 'We need $200, and we are going to get from you and if we don't get it you have a nice wife and kid and we can take care of you too and we have 3 irons in the car and we mean business;' with intent thereby to extort money;

"And  *  *  *  not being then and there armed with a dangerous weapon, putting in fear, and did

feloniously rob, steal and take from the person of, and in the presence of said Henry J. Druzynski certain property which was the subject of larceny, to-wit: 5 dollars in lawful money of the United States of America and of the value of $5 contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

Before the jury was impaneled, motions were timely made to dismiss and quash the information. These motions were not then acted upon but were taken under advisement.

Two of defendants' questions on appeal pertain to the state of the record.

In their motion below for new trial, defendants sought leave to file a supplemental motion upon completion of the transcript of record. Although this transcript was promptly ordered, it was not promptly furnished, and, because of the delay, many adjournments of the motion were required. Nor was a transcript furnished prior to the trial judge's denial of the motion. Thereafter defendants were informed by the court reporter that he had lost his stenographic notes containing the direct examination and part of the cross-examination of the complaining witness. The jury trial was concluded in December of 1949. The motion for new trial was denied on February 21, 1951. The settled record was not signed until November 12, 1952, and, as submitted here, did not contain the missing testimony. On November 7, 1953, a settled supplemental record containing this testimony was filed, and thus the entire record was complete when the appeal was argued. Defendants' questions, which have to do with the missing testimony, are now moot, including those of deprivation of constitutional rights of due process

and equal protection of the laws.*    We note with disapproval the violation of Court Rule No 66, § 2 (1945), but are precluded by Court Rule No 67, § 1 (1945) from passing upon that question which should have been raised by the people.    Our examination of the supplemental record does not disclose any testimony, the temporary loss whereof would have deprived defendants of their substantive rights.

Other questions regarding election of counts, the charge to the jury, claimed undue restriction of cross-examination of a material witness and great weight require a recital of the facts.

The complaining witness, Henry J. Druzynski, lives with his wife and child in the city of Detroit. At the time he was in the haberdashery business, although the suggestion was made in his cross-examination that he was also operating a baseball numbers pool.    This he denied.    He apparently was acquainted with defendant Sadak, who had visited at his home on August 14, 1949.    About a week later, at 1 o'clock in the morning, Druzynski and his friend, Stanley Novak, left a bar on East 7-Mile Road in the city of Detroit to enter his car.    He noticed another automobile parked about 20 feet away facing in the same direction.    As Druzynski got into his car with Novak, Sadak approached and told Druzynski he wanted to talk to him.    He got out and went with Sadak to the sidewalk, where Kruper, approaching from the car in the rear, joined them.    In the conversation that ensued the defendants demanded $200.    According to Druzynski, they said:    "We aren't fooling and we are going to get it."    He further testified:

"So they gave me a good shaking up.    They both shook me up by the arms.    They held me by the arms.

---

* See US Const, Am 14; Mich Const 1908, art 2, §§ 1, 16.—Reporter.

I got frightened, scared and afraid of everything, so I said 'I haven't got that kind of money.' Then Iggy said to me 'You've got lots of money. We will take you home.' So they both grabbed me and attempted to take me to my house."

When asked how much money he had, Druzynski took $9 out of his pocket, consisting of a $5 bill and 4 ones, and stated that that was all he had. Sadak looked at the money, made some obscene remarks, and gave it back, saying: "Wait a minute," and then, according to Druzynski, Sadak took $5 out of the money and kept it. Druzynski further testified:

"Then Iggy said to me, 'You got a nice boy and wife,' and that is when Kruper walked over to the car and said something to Novak who was still in the car. In the meantime while he went down there Iggy grabbed me by the arm and he said, 'Look, if you think we are kidding around or fooling around, we have got 3 irons laying in the car.' I said I didn't want to go to the car because he was going to show me he had 3 irons. I said I'd take his word for it. He did not say what kind of irons they were. He just said '3 irons.' Novak was still in the car talking to Kruper and they had a little scuffle there. I saw the scuffle. It was a little shaking up job. I actually saw it."

Kruper then ordered Novak to get out and go home and Sadak got into the car with Druzynski and rode with him to another bar, where an unsuccessful attempt was made to borrow $200. Kruper had followed in his car. The conversation was continued, with Druzynski pleading for more time, and finally an appointment was made for the next morning at a designated place. After Kruper and Sadak left, Druzynski went to the Davison avenue police station and reported the facts and the police arranged to be present at the proposed meeting.

An important question in the case is that of election of counts.

The elements of the crime of extortion as stated in the statute (CL 1948, § 750.213 [Stat Ann § 28.410]) are as follows:

"Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense, or shall orally or by any written or printed communication maliciously threaten any injury to the person or property or mother, father, husband, wife or child of another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony, punishable by imprisonment in the State prison not more than 20 years or by a fine of not more than $10,000."

The statute pertaining to the crime of robbery unarmed (CL 1948, § 750.530 [Stat Ann § 28.798]) reads:

"Any person who shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the State prison not more than 15 years."

The primary distinction between the offense of robbery and extortion is that in robbery the taking must be without the consent of the party robbed, while in extortion the taking is with consent. However, in both crimes may exist the elements of the use of force, violence, fear, et cetera. See 2 Gillespie, Michigan Criminal Law and Procedure (1st

ed), §§ 1169–1173, pp 1467–1470, and § 1844, pp 2044–2045.

These crimes are not completely inconsistent in the eyes of the law. The threat to do "injury to the person or property," or to the class enumerated in the extortion statute, when accompanied by force, actual or constructive, and property or money is given up in consequence of that force, these elements can constitute robbery. Whenever the elements of force or putting in fear enter into the taking, and that is the cause which induces the party to part with his property, such taking is robbery. This is true regardless of how slight the act of force or the cause creating fear may be, provided, in the light of the circumstances, the party robbed has a reasonable belief that he may suffer injury unless he complies with the demand. In the light of this relationship between the 2 crimes, the people were not required to elect under which count they should proceed.

Furthermore, under the general rule as stated in 1 Gillespie, Michigan Criminal Law and Procedure (1st ed), § 429:

"Where several offenses are charged, though distinct in point of law, yet spring out of substantially the same transaction, or, are so connected in their facts as to make them substantially parts of the same transaction, or connected series of facts, the defendant cannot be prejudiced in his defense by the joinder, and the court will neither quash nor compel an election. Even though 2 or more distinct offenses are charged in separate counts, where they all spring out of the same transaction and are covered by the same testimony, an election will not be required. Where distinct offenses are charged in different counts, but were committed by the same acts at the same time, and the same testimony must necessarily be relied upon for conviction, the people ought not to be compelled to elect."

A recent pronouncement of this Court on this subject appears in *People* v. *Johns,* 336 Mich 617. Other authorities are: *People* v. *Aikin,* 66 Mich 460 (11 Am St Rep 512); *People* v. *Kolowich,* 262 Mich 137; *People* v. *Rose,* 268 Mich 529; *People* v. *Bommarito,* 309 Mich 139; *People* v. *Nankervis,* 330 Mich 17; *People* v. *Percin,* 330 Mich 94; *People* v. *Larco,* 331 Mich 420; and *People* v. *Andrus,* 331 Mich 535.

Defendants cite *People* v. *Aikin, supra; People* v. *Marks,* 255 Mich 271; and *People* v. *Lahey,* 256 Mich 250, to sustain their contention that an election of counts was mandatory. These authorities are readily distinguishable on the facts and do not fall within the requirements of the rule just discussed, because each of them involved separate, inconsistent and distinct offenses not arising out of the same transaction or related in point of time.

Defendants cited *People* v. *Aikin, supra; People* v. *Stahl,* 234 Mich 569; *People* v. *Gessinger,* 238 Mich 625; *People* v. *Allen,* 252 Mich 553; and *People* v. *Ormsby,* 310 Mich 29, in support of their argument that the court erred in instructing the jury that it could bring in a verdict of guilty on both counts. It is sufficient to say that the jury did not return a general verdict nor one of guilty on each count, but only one of guilty on the count pertaining to the crime of extortion. Therefore, no harmful or prejudicial error could have resulted. Both crimes were provable by the same testimony, and only 1 time, 1 place and 1 transaction were involved. See *People* v. *Lowenstein,* 309 Mich 94.

Defendants also argue that the trial court erred in failing to apprise the jury of the basic elements of the offenses charged and in failing to define the applicable law. Examination of the charge does not sustain these contentions. The information was read to the jury, as were the applicable statutes. The charge, taken in its entirety, was fair and suf-

ficiently comprehensive.   We said in *People* v. *Noyes,* 328 Mich 207:

"In our opinion the reading of the statute relating to the crime is an instruction to the jury and is to be considered by them as any other given instruction. The failure of the trial court to repeat this element of the crime is not error."

The court restricted the cross-examination of a witness—and this is claimed to be error.  The scope of cross-examination, when the attempt is made to impeach a witness, is a matter of discretion.  *People* v. *MacCullough,* 281 Mich 15.  The defendants were not unduly restricted in their cross-examination of the people's witnesses, and, therefore, we find no abuse of judicial discretion.

The court did not err in denying the motion for a new trial.  *People* v. *Sanford,* 252 Mich 240.  The verdict is not against the great weight of the evidence, and there is ample testimony in the record to support the jury's verdict of guilty of extortion.

The verdict and the sentences are affirmed.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.