RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0146p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-1773

ANTON MAURICE FULLER-RAGLAND,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:18-cr-00016-1—Paul Lewis Maloney, District Judge.

Decided and Filed: June 7, 2019[*]

Before: BOGGS, BATCHELDER, and BUSH, Circuit Judges

───────────────

## COUNSEL

**ON BRIEF:** Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Mark V. Courtade, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

───────────────

## OPINION

───────────────

BOGGS, Circuit Judge. Anton Fuller-Ragland appeals from a sentence of 120 months of imprisonment after pleading guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Fuller-Ragland argues that the district court erred when it concluded that

───────────────

[*]This decision was originally filed as an unpublished opinion on June 7, 2019. The court has now designated the opinion for publication.

a violation of the Michigan offense of unarmed robbery, Mich. Comp. L. § 750.530, constituted a "crime of violence" within the meaning of USSG § 2K2.1(a)(3). Fuller-Ragland also disputes the applicability of a sentencing enhancement for an altered or obliterated serial number on a firearm. Because we hold that a violation of Mich. Comp. L. § 750.530 is a "crime of violence," and because the district court did not commit plain error in applying the sentencing enhancement, we affirm the district court's sentence.

## I. FACTS AND PROCEDURAL HISTORY

On January 11, 2018, police officers in Portage, Michigan received a report of a suspicious vehicle without a license plate in a jewelry-store parking lot. Fuller-Ragland was sitting in the vehicle and admitted to officers that he was on probation, that he had a pistol on his person, and that he did not have a concealed-carry permit. The officers confiscated Fuller-Ragland's pistol, arrested him, and recovered a second pistol, ammunition, and controlled substances from the vehicle. The pistol Fuller-Ragland had been carrying was a 9mm pistol with the serial number 158536. Fuller-Ragland's presentence report ("PSR") described the serial number as "partially obliterated."[1] Fuller-Ragland was indicted and pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

Applying the Sentencing Guidelines ("Guidelines"), the PSR calculated Fuller-Ragland's base offense level under USSG § 2K2.1(a)(3) as 22, based in part on Fuller-Ragland's prior conviction for unarmed robbery in Michigan, which the PSR identified as a crime of violence. The PSR also applied a four-level enhancement under USSG § 2K2.1(b)(4)(B), because the 9mm pistol had an "altered or obliterated serial number." The PSR established an advisory Guidelines range of 121 to 151 months of imprisonment, although the statutory maximum Fuller-Ragland could receive was 120 months. Fuller-Ragland did not object to the calculation of his base offense level or the imposition of the four-level enhancement for an altered or obliterated serial number. He did, however, object to the PSR's recommendation that the district court should not grant him a reduction for acceptance of responsibility.

---

[1]An eTrace on the 9mm pistol revealed that the weapon had been reported stolen. Further ATF investigations uncovered that the pistol had been used in two shootings, including a shooting the day before police seized the pistol from Fuller-Ragland.

At sentencing, the district court sustained Fuller-Ragland's objection and gave him a full acceptance-of-responsibility credit, reducing his Guidelines range to 87 to 108 months of imprisonment. The district court considered the 18 U.S.C. § 3553(a) factors and decided that an upward variance to the statutory maximum—120 months—was appropriate because the circumstances of Fuller-Ragland's arrest and his prior record indicated that Fuller-Ragland was a "significant risk to the public and a significant risk to re-offend." The district court focused on the protection of the public, deterrence, and Fuller-Ragland's criminal history in its decision to vary upward and impose the statutory maximum. Fuller-Ragland did not object. This appeal followed.

## II. ANALYSIS

Fuller-Ragland alleges two errors in his sentence. First, he disputes that the Michigan offense of unarmed robbery, Mich. Comp. L. § 750.530, is a "crime of violence" under USSG § 2K2.1(a)(3), and asserts that his Guidelines range was incorrectly calculated. Second, Fuller-Ragland argues that because the serial number on the 9mm pistol was only "scratched through but still [was] clearly legible," the four-level enhancement under USSG § 2K2.1(b)(4)(B) is not applicable. He asks that this court vacate his sentence and remand for resentencing.

### A. Standard of Review

A district court's failure to properly calculate the advisory Guidelines range is a "significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). Fuller-Ragland did not object to the PSR nor did he raise these issues in the district court. Therefore, we review his challenge to the procedural reasonableness[2] of his sentence for plain error. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc); *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Fuller-Ragland must show an error that was "obvious or clear," that affected his substantial rights and that this adverse impact seriously "affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386 (quoting *United States v.*

---

[2]Fuller-Ragland also suggests that his sentence was substantively unreasonable because, as the Guidelines are subject to the same interpretive rules as other statutes, a mistake in applying the Guidelines constitutes an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007), identifies a failure to calculate the Guidelines range correctly as a procedural, not a substantive error. Fuller-Ragland has not identified authority indicating that we should depart from this precedent, and acknowledges that the error is procedural.

*Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). Plain error warrants reversal "only in exceptional circumstances and only where the error is so plain that the trial judge . . . [was] derelict in countenancing it." *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994).

This court has not previously addressed whether a violation of the current version of Mich. Comp. L. § 750.530 constitutes a "crime of violence" within the meaning of the Guidelines. *See* USSG §§ 2K2.1(a)(3); 4B1.2(a). We have held that a violation of an earlier version of this statute[3] is a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"). *See Chaney v. United States*, 917 F.3d 895, 897 (6th Cir. 2019); *United States v. Matthews*, 689 F. App'x 840, 846 (6th Cir. 2017). Two of our sister circuits agree. *See United States v. Lamb*, 638 F. App'x 575, 577 (8th Cir. 2016), *vacated on other grounds*, 137 S. Ct. 494 (2016); *United States v. Tirrell*, 120 F.3d 670, 680 (7th Cir. 1997). We routinely use authority that interprets the elements clause in the ACCA, 18 U.S.C. § 924(e)(2)(B)(i), to interpret the same phrase that appears in the Guidelines: "has as an element the use, attempted use, or threatened use of physical force against the person of another." *See United States v. Maynard*, 894 F.3d 773, 774 (6th Cir. 2018).

Before the 2004 amendment, Mich. Comp. L. § 750.530 provided that:

Any person who shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence; any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in state prison not more than 15 years.

Mich. Comp. L. § 750.530 (P.A. 1931, No. 328 § 530) (amended by P.A. 2004, No. 128). After the amendment, the statute now reads:

(1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or

---

[3]*See Chaney v. United States*, 917 F.3d 895, 900 n.2 (6th Cir. 2019); *United States v. Matthews*, 689 F. App'x 840, 844 (6th Cir. 2017); *United States v. Tirrell*, 120 F.3d 670, 679–80 (7th Cir. 1997). In *United States v. Lamb*, 638 F. App'x 575, 576–77 (8th Cir. 2016), *vacated on other grounds*, 137 S. Ct. 494 (2016), it is not clear whether Lamb was convicted under the original or amended version of Mich. Comp. L. § 750.530. *Lamb*, however, relied on Michigan cases that interpreted the pre-amendment version of the unarmed-robbery statute. *See Lamb*, 638 F. App'x at 576 (citing *People v. Randolph*, 648 N.W.2d 164 (Mich. 2002), *superseded by statute*, P.A. 2004, No. 128, *as recognized in People v. March*, 886 N.W.2d 396 (Mich. 2016)).

> who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.
>
> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

Mich. Comp. L. § 570.530. Fuller-Ragland was convicted under the amended statute. It does not appear that this circuit, or any of our sister circuits, have examined the amended statute.[4] Our analysis of whether Michigan's unarmed-robbery statute constitutes a "crime of violence" within the meaning of the Guidelines is confined to the statute under which Fuller-Ragland was sentenced. *Chaney*, 917 F.3d at 900 n.2.

The term "crime of violence" in USSG § 2K2.1(a)(3) has "the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." USSG § 2K2.1, comment. (n.1). USSG § 4B1.2(a) provides that:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

Fuller-Ragland argues that Michigan's unarmed-robbery statute is not a "crime of violence" within the meaning of USSG § 4B1.2(a)(1) because it does not have the use, attempted use, or threatened use of physical force against the person of another as an element. He also contends that, as amended, the Michigan offense is "broader" than generic robbery and therefore does not fall within the enumerated-offense clause.

---

[4]Two district courts have concluded that a violation of Michigan's unarmed-robbery statute, as amended, is not a crime of violence. *See United States v. Harris*, 323 F. Supp. 3d 944 (E.D. Mich. 2018); *United States v. Lamb*, No. 16-20077, 2017 WL 730426 (E.D. Mich. Feb. 24, 2017).

The United States, relying in large part on analyses of the statute before it was amended, argues that Michigan unarmed robbery is a crime of violence under both the "elements" and "enumerated" clauses. The United States maintains that Michigan courts construe the statute consistently with the degree of force required for "physical force" under *Johnson v. United States*, 559 U.S. 133 (2010). The United States also contends that, even if we agree with Fuller-Ragland that Michigan unarmed robbery is not a crime of violence, the district court did not commit plain error.

We begin with the "elements" clause of USSG § 4B1.2(a)(1). In this inquiry, we consider whether Michigan unarmed robbery has as an element "the use, attempted use, or threatened use of physical force against the person of another." *Ibid.*; *see also United States v. Yates*, 866 F.3d 723, 727 (6th Cir. 2017). To make this assessment, we apply the "categorical" approach, "meaning that we look at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the crime." *United States v. Ford*, 560 F.3d 420, 421–22 (6th Cir. 2009). We assume that Fuller-Ragland's conviction was based on the least of the acts criminalized under the Michigan unarmed-robbery statute and then determine whether those acts would qualify as a crime of violence under the Guidelines. *Yates*, 866 F.3d at 728. The Supreme Court has held that, in the context of the ACCA, "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140 (emphasis in original). In *Stokeling v. United States*, 139 S. Ct. 544, 550 (2019), decided after the briefing in this case concluded, the Supreme Court elaborated that "force capable of causing . . . injury" includes any level of force, however, small, that is necessary to "overcome the victim's resistance." With these cases in mind, we look to state law to determine the minimum level of force criminalized under Mich. Comp. L. § 750.530 and then determine if that conduct is the type of "violent force required by the [G]uidelines' force clause." *Yates*, 866 F.3d at 728.

The elements of Michigan unarmed robbery are: (1) feloniously taking the property of another; (2) using force or violence or assault or putting in fear against any person present while attempting, committing, fleeing or attempting to flee, or in attempting to retain possession of the property; (3) doing so while unarmed. *People v. Harverson*, 804 N.W.2d 757, 761 (Mich. Ct.

App. 2010); Mich. Comp. L. § 750.530. Michigan's unarmed-robbery statute uses the disjunctive "or" to separate "force," "violence," "assault," and "putting in fear," which indicates that the defendant can use *any* of these to commit unarmed robbery. *See* Mich. Comp. L. § 750.530(1); *People v. Kowalski*, 803 N.W.2d 200, 208 (Mich. 2011) (explaining that use of the disjunctive "or" indicates there may be multiple ways to commit a crime); *see also People v. Keller*, Nos. 334123 & 335254, 2018 WL 559696, at *3 (Mich. Ct. App. Jan. 25, 2018) ("Thus, 'put[ting] the person in fear' is just one type of conduct that can establish robbery when the actor engages in the conduct 'in the course of committing a larceny.'" (quoting Mich. Comp. L. § 750.530(1))). If there is a realistic probability that Michigan applies its unarmed-robbery statute in a way that "criminalizes a level of force lower than the type of violent force required by" the Supreme Court's decisions, then a violation of that statute is not a "crime of violence." *Yates*, 866 F.3d at 730.

Both Fuller-Ragland's and the United States's arguments center on "force." But we conclude that "putting in fear" represents the least of the acts criminalized under Mich. Comp. L. § 750.530, and our analysis must proceed accordingly.[5] *See Yates*, 866 F.3d at 728. In *Matthews*, we held that "[b]ecause Michigan law requires one to fear injury in order to be 'put in fear,' Michigan's statute criminalizing unarmed robbery is a violent felony for the purposes of the ACCA." 689 F. App'x at 845; *see also Chaney*, 917 F.3d at 900. In reaching this conclusion, we relied on Michigan precedent interpreting the pre-amendment statute as requiring that "the act causing the victim to be put in fear—however slight—must be 'capable of causing physical pain or injury to another person.'" *Matthews*, 689 F. App'x at 845 (quoting *Johnson*,

---

[5]*Stokeling v. United States* analyzed only whether the force required for robbery by *actual* force under Florida law was consistent with *Johnson*. *See* 139 S. Ct. 544, 549 (2019). Because, however, Michigan courts have made it clear that actual force is not necessary to commit a robbery, we must determine whether Michigan unarmed robbery requires a "*threatened* use of physical force" consonant with *Stokeling*. USSG § 4B1.2(a)(1) (emphasis added). *Harris*, which Fuller-Ragland relies on, does not address whether "putting in fear" under the amended statute is sufficient under the elements clause. Instead, the district court held that the level of "force" required under the statute was not "linked to a potential for physical pain or injury," and because Michigan courts have "affirmed unarmed robbery convictions involving force that lacked the meaningful potential to cause such pain or injury, the crime of unarmed robbery in Michigan is not a 'crime of violence' under the elements clause of § 4B1.2(a)." 323 F. Supp. 3d at 950. We note that *Harris* predates *Stokeling*, which clarified that any force necessary to overcome a victim's resistance is sufficient. For that reason, we do not find *Harris* or the other district court case cited in note 4, *supra*, persuasive.

559 U.S. at 140). In *People v. Kruper*, 64 N.W.2d 629, 632 (Mich. 1954), the Michigan Supreme Court explained:

> Whenever the elements of force or putting in fear enter into the taking, and that is the cause which induces the party to part with his property, such taking is robbery. This is true regardless of how slight the act of force or the cause creating fear may be, provided, in the light of the circumstances, the party robbed has a reasonable belief that he may suffer injury unless he complies with the demand.

Because "putting in fear" requires a fear of physical injury, the pre-amendment version of Michigan unarmed robbery was a crime of violence. *See Chaney*, 917 F.3d at 900; *Matthews*, 689 F. App'x at 845; *see also United States v. Mitchell*, 743 F.3d 1054, 1059 (6th Cir. 2014) (a violation of Tennessee's robbery statute is a crime of violence because commission of robbery through fear requires fear of bodily injury from physical force); *United States v. Lewis*, 405 F.3d 511, 514 (7th Cir. 2005) (violation of Indiana's robbery statute accomplished by putting someone in fear is crime of violence because it must be a fear of physical injury). We therefore turn to Michigan precedent interpreting the amended statute to determine whether a violation of Michigan's amended unarmed-robbery statute is a crime of violence. *See Mitchell*, 743 F.3d at 1059.

The amendments to the statute created a "*broader change*" to Michigan's robbery statutes.[6] *People v. Williams*, 814 N.W.2d 270, 276 (Mich. 2012) (emphasis in original). The pre-amendment statute required that the force, violence, assault, or putting in fear used to accomplish the underlying larceny had to be contemporaneous with the taking. *Id.* at 273 (citing *People v. Randolph*, 648 N.W.2d 164, 167 (Mich. 2002), *superseded by statute*, P.A. 2004, No. 128, *as recognized in People v. March*, 886 N.W.2d 396 (Mich. 2016)). The amended statute adopted the transactional theory of robbery; therefore the force, violence, assault, or putting in fear did not have to be used to accomplish the taking—instead it could be used before or after the taking, in flight or attempted flight, or to retain the stolen property. *Id.* at 273–74. The amendment also extended the robbery statute to cover both a completed larceny *and* an

---

[6]*People v. Williams*, 814 N.W.2d 270, 274 (Mich. 2012), considered whether the amendment to Mich. Comp. L. § 750.530 removed the element of a completed larceny from the Michigan offenses of armed or unarmed robbery. *Williams* affirmed a defendant's conviction for armed robbery because he used the threat of force or violence against a clerk by "representing that he was armed with a dangerous weapon . . . ." *Id.* at 280.

attempt.**7** *Id.* at 276–77. But Michigan Supreme Court precedent interpreting the amended unarmed-robbery statute has not examined what is sufficient to convict a defendant for unarmed robbery by putting in fear under the amended statute.**8**

Under the pre-amendment version of the statute, Michigan assessed whether an individual had been put in fear through the following inquiry: "[w]hen a person is induced to part with property out of fear, the test to determine whether a robbery has been committed is whether 'the party robbed has a reasonable belief that he may suffer injury unless he complies with the demand.'" *People v. Hearn*, 406 N.W.2d 211, 214 (Mich. Ct. App. 1987) (quoting *Kruper*, 64 N.W.2d at 632). Michigan's intermediate appellate court has continued applying this analysis in determining whether a victim was put in fear under the amended statute.

In *People v. Harris*, No. 267333, 2007 WL 1989454, at *2 (Mich. Ct. App. July 10, 2007) (per curiam), the Michigan Court of Appeals held that there was insufficient evidence to support a conviction for an unarmed robbery under the amended statute. The defendant got into a taxi, but the driver refused to take him anywhere without payment up front because she had been recently stiffed by someone going to the same address. *Id.* at *1. The defendant and the driver got into an argument, and the defendant told the driver that the next time he saw her, "he was going to put a cap in [her]." *Ibid.* Then the defendant grabbed some money from the cab's console and left. The driver testified at trial that she was not afraid and thought it was an empty threat. *Ibid.* The court found that there was no evidence that the defendant had committed the larceny by force, violence, or assault—he had not attempted to commit a battery against the

---

**7***Williams* noted that the amendment was consistent with the Model Penal Code's definition of robbery. 814 N.W.2d at 278 (citing 2 American Law Institute, Model Penal Code & Commentaries § 222.1, at 96 (1980)). The Model Penal Code provides that a person is guilty of robbery if, in the course of committing a theft, the robber "[t]hreatens another with or purposely puts him in fear of immediate serious bodily injury[.]" 2 American Law Institute, Model Penal Code & Commentaries § 222.1, at 96 (1980). This appears to be consistent with the level of force required by *Johnson v. United States*, 559 U.S. 133, 140 (2010). *Williams* expressly stated that the Model Penal Code was not used as interpretive tool, but rather to put the amendments in context. *Williams*, 814 N.W.2d at 278 n.42. The use of Model Penal Code language, the court explained, "complements our conclusion that the Legislature was not undertaking an effort to (re)codify the common law understanding with the 2004 revisions." *Ibid.*

**8***Williams* does address the threatened use of force in relation to *armed* robbery. Treating robbery as an offense against a person is "particularly appropriate" when the robber is armed because "the safety and security of the person is most severely threatened, and the larcenous taking is of secondary importance." 814 N.W.2d at 280 (quoting *People v. Hendricks*, 521 N.W.2d 546, 553 (Mich. 1994)).

driver or put her in "reasonable apprehension" of an immediate battery. *Ibid.* Nor was there any evidence that "the larceny was accomplished by fear." *Id.* at *2. Relying on the test in *Hearn* and *Kruper*, which interpreted the pre-amendment statute, the court explained that "[w]hether property is taken as a result of fear must be determined from the victim's perspective." *Ibid.* The driver's testimony established that she had not been placed in fear, and the defendant had not used a threat of injury to demand money from the driver. *Ibid.*

Other decisions from the Michigan Court of Appeals track this analysis. In determining whether the evidence was sufficient for a conviction of unarmed robbery by putting in fear, the court has examined whether the victim had a reasonable belief that he or she will suffer physical injury if he or she does not comply with the robber's demands. For example, in *People v. Nelson*, No. 316065, 2014 WL 4628765, at *1 (Mich. Ct. App. Sept. 16, 2014) (per curiam), the court affirmed a defendant's conviction of two counts of unarmed robbery when the defendant accosted two victims, Jeffrey and Draper. The defendant punched Jeffrey, and took property that belonged to both victims. The defendant argued that there was insufficient evidence to support his conviction of unarmed robbery against Draper. *Id.* at *3. The court concluded that the defendant "accomplished the taking from Draper by placing Draper in fear" because Draper had testified that he was afraid of being hurt. *Id.* at *4; *see also People v. Krok*, No. 341288, 2019 WL 1780634, at *3 (Mich. Ct. App. Apr. 23, 2019) (per curiam) (evidence was sufficient to prove defendant robbed a store by putting the clerk in fear of being hurt when defendant, while wearing a ski mask, entered the store at 3:30 a.m., demanded money, and both of the defendant's hands were not visible at times during the robbery); *People v. Scott*, No. 338046, 2018 WL 2166047, at *1 (Mich. Ct. App. May 10, 2018) (per curiam) ("By telling her that he was going to be arrested for beating a female and then walking toward her, defendant threatened to harm her. Viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence to establish that defendant assaulted or put the victim in fear while taking her phone."); *People v. Houle*, No. 289436, 2010 WL 2441041, at *1 (Mich. Ct. App. June 17, 2010) (per curiam) (elements for conviction of unarmed robbery "alternatively satisfied" because defendant caused victim to feel "intense fear" when he shoved her); *People v. Blount*, Nos. 270875, 271062 & 271292, 2007 WL 4548042, at *6 (Mich. Ct. App. Dec. 27, 2007) (per curiam) (sufficient evidence to convict defendant of unarmed robbery when defendant and his accomplice searched

the house, demanded money, threatened a "blood bath," punched one victim, then went through the other victim's pockets and took his money, allowing the jury to infer that the victim was "in reasonable fear of an immediate battery if he resisted").

Michigan defines "putting in fear" as a fear of physical injury. *See Harris*, 2007 WL 1989454, at *2. This is consistent with the pre-amendment statute. *See Chaney*, 917 F.3d at 900; *Matthews*, 689 F. App'x at 845. Furthermore, because "putting in fear" of physical injury involves a "threatened use" of at least enough force to overcome a victim's resistance, it is consistent with the Guidelines and with *Stokeling*. USSG § 4B1.2(a)(1); *see Stokeling*, 139 S. Ct. at 553. We therefore hold that a violation of Mich. Comp. L. § 750.530, as amended, is a "crime of violence" within the meaning of the elements clause of USSG § 4B1.2(a)(1) and USSG § 2K2.1(a)(3). Consequently, we will not address whether Michigan unarmed robbery fits within the enumerated-offense clause. The district court did not commit plain error in calculating Fuller-Ragland's advisory Guidelines range.

## B. The Four-Level Enhancement for an "Altered or Obliterated" Serial Number

We next consider whether the district court committed plain error in applying the four-level enhancement for an altered or obliterated serial number under USSG § 2K2.1(b)(4)(B). Fuller-Ragland argues that the enhancement is not applicable because the serial number was "sufficiently legible to be read" and to allow the 9mm pistol to be traced. Fuller-Ragland proposes that, as the serial number was legible and visible to the naked eye, any damage to it was not material. He attempts to distinguish precedent from other circuits by emphasizing that, in those cases, the serial numbers were illegible or there was more severe damage. Fuller-Ragland also contends that, because law enforcement could trace the firearm, applying the enhancement here is inconsistent with the policy behind the enhancement.

The United States asserts that the district court did not commit plain error in applying the enhancement because the cases from this and other jurisdictions have applied the enhancement even when the serial number has only been partially destroyed. The United States argues that Fuller-Ragland's proposed "naked-eye test" is inconsistent with this precedent, and that the serial number on the 9mm pistol was "markedly obliterated, scratched through and the majority of the

numbers unreadable unless subjected to close scrutiny." The United States maintains that applying the enhancement for serial numbers that have been rendered substantially less legible is in harmony with the policy goals behind the enhancement because punishing possession of weapons that appear more difficult to trace deters trafficking in untraceable weapons.

The record does not contain a picture of the 9mm pistol with its "partially obliterated serial number." The United States filed a motion in district court to supplement the record for appeal with a picture of the pistol. Fuller-Ragland opposed the motion, and the district court has not issued a ruling. This deficiency is inconvenient, but does not hamper our review in this particular case. Fuller-Ragland did not object to the PSR and is therefore deemed to have accepted all the factual allegations contained in it. *See Vonner*, 516 F.3d at 385.[9] Absent an objection, the district court can accept any undisputed portions of the PSR as a finding of fact.[10] *See United States v. Denson*, 728 F.3d 603, 615 (6th Cir. 2013). We therefore proceed with the understanding that the serial number on the 9mm pistol was "partially obliterated," even though law enforcement was eventually able to identify the number and trace the pistol. The record does not indicate the means by which law enforcement was able to recover the serial number and trace the gun.

Section 2K2.1(b)(4)(B)'s enhancement applies whether or not the defendant is aware of the alteration or obliteration. USSG § 2K2.1 comment. 8(B); *United States v. Love*, 364 F. App'x 955, 959 (6th Cir. 2010). The Guidelines do not define what constitutes an "altered or obliterated serial number." *See Love*, 364 F. App'x at 959–60; *United States v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005).

We have only briefly addressed this enhancement in *Love*. In that case, we relied on *Carter*, 421 F.3d at 916, which held that a serial number is "altered or obliterated" when it is "materially changed in a way that makes accurate information less accessible." *See Love*, 364 F. App'x at 959–60 (discussing *Carter*). In *Love*, we held that the district court did not "clearly

---

[9]For this reason, we also reject Fuller-Ragland's argument that we should not accord any deference to the record's description of the serial number as "partially obliterated."

[10]The district court did not refer to the status of the 9mm pistol's serial number during Fuller-Ragland's sentencing hearing.

err" when it concluded that the firearm in question had an altered or obliterated serial number when "two of the serial numbers were markedly more difficult to ascertain," and "the numbers were not immediately distinguishable to the investigators." *Id.* at 960.

Other courts that have interpreted "altered or obliterated" have followed *Carter*'s holding and analysis. *See United States v. Serrano-Mercado*, 784 F.3d 838, 850 (1st Cir. 2015); *United States v. Harris*, 720 F.3d 499, 503–04 (4th Cir. 2013); *United States v. Justice*, 679 F.3d 1251, 1254 (10th Cir. 2012); *United States v. Jones*, 643 F.3d 257, 258 (8th Cir. 2011); *United States v. Perez*, 585 F.3d 880, 884–85 (5th Cir. 2009). Analyzing the application of the enhancement when the gun in question had its serial number printed in two separate locations, the Eleventh Circuit has held that the enhancement applies "either when *any* serial number on a gun has been altered or obliterated or when *just one* serial number has been altered or obliterated." *United States v. Warren*, 820 F.3d 406, 408 (11th Cir. 2016) (per curiam) (emphasis in original); *see also United States v. Adams*, 305 F.3d 30, 34 (1st Cir. 2002) (holding that "any change that makes the serial number appreciably more difficult to discern" is sufficient for conviction under 18 U.S.C. § 922(k), which criminalizes possession of a firearm with a serial number that has been "removed, obliterated, or altered"); *United States v. Mixon*, 166 F.3d 1216, at *3 (6th Cir. 1998) (table) (affirming conviction under 18 U.S.C. § 922(k) because "a portion of the serial number had been obliterated" and "a reasonable fact-finder could conclude that the serial number had been altered or obliterated").

Other jurisdictions have concluded that the enhancement applies even when a portion of the serial number had been removed, partially obliterated, or altered. *See Warren*, 820 F.3d at 408 (enhancement applies when any serial number on a gun has been altered or obliterated); *Serrano-Mercado*, 784 F.3d at 850 (concluding that enhancement applies when the gun's serial number is printed in two locations and one of the serial numbers has been obliterated but the other has not); *Harris*, 720 F.3d at 504 (district court did not err in applying the enhancement when there were "gouges and scratches" on the serial number that precluded the court from reading the number correctly); *Perez*, 585 F.3d at 885 (affirming district court's finding that the serial number was "altered or obliterated" when it appeared that someone had tried to scratch the numbers off). Similarly, courts have affirmed the application of the enhancement when the serial

number was initially unreadable, but eventually recovered.  *See Justice*, 679 F.3d at 1254; *Carter*, 421 F.3d at 910.  Courts have also concluded that the policy behind the enhancement—deterrence and assisting law enforcement—is served even if law enforcement can ultimately identify the serial number and trace the firearm.  *See Harris*, 720 F.3d at 502–03; *Carter*, 421 F.3d at 915.

In light of the record, the standard of review we are bound to apply, our opinion in *Love*, and the way other jurisdictions have interpreted and applied this enhancement, we conclude only that the district court did not commit plain error in applying the enhancement in USSG § 2K2.1(b)(4)(B).  The PSR described the serial number as "partially obliterated," a description that indicates that at least some of the digits in the 9mm pistol's serial number had been altered or obliterated.  *See Love*, 364 F. App'x at 960.  The fact that *some* of the digits may have been visible and law enforcement was eventually able to recover the serial number and trace the firearm does not, under the specific circumstances of this case, make the application of the enhancement an "error . . . so plain that the trial judge . . . [was] derelict in countenancing it." *Carroll*, 26 F.3d at 1383.

The judgment of the district court is AFFIRMED.