*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

V

LOREYA FLUKER,

Defendant-Appellant.

UNPUBLISHED
March 12, 2026
9:14 AM

No. 372867
Wayne Circuit Court
LC No. 23-005451-01-FH

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

Defendant, Loreya Fluker, appeals as of right her jury trial convictions of two counts of assaulting, resisting, obstructing, or opposing a police officer, MCL 750.81d(1). Following her convictions, Fluker was sentenced to two years' probation. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of a traffic stop in which Officer Joshua Martin of the Detroit Police Department pulled Fluker over because he noticed that her registration tags were expired. He also determined that Fluker did not have insurance for her vehicle. Fluker refused to provide identification, saying she had a right to travel, and she was not traveling in a commercial capacity. Officer Martin requested that a supervisor assist him with the traffic stop, and Sergeant Alyssa Vogel joined him at the scene. When Fluker continued to refuse to provide identification and also refused to step out of the vehicle when asked, Sergeant Vogel and Officer Martin pulled her out of the car and attempted to handcuff her. As they did so, Fluker was "pulling away and screaming and pulling her arms and kicking and refusing to comply." During the scuffle, Sergeant Vogel lost her balance and fell.

Fluker was initially issued three citations as a result of this interaction: one for operating a vehicle without insurance, one for her expired plates, and one for the failure to obey a lawful order to identify herself. The citations in the district court were later dismissed without prejudice following a pretrial hearing.

-1-

Shortly thereafter, the prosecution filed a felony information charging Fluker with two counts of assaulting, resisting, obstructing, or opposing, one as to Sergeant Vogel, and another as to Officer Martin. Before trial, Fluker moved to dismiss the charges against her based on alleged substantive and procedural due-process violations. She argued, more specifically, that the prosecution was withholding exculpatory evidence, that Officer Martin's testimony at the preliminary examination differed from his prior account, that her counsel was ineffective, that this case was barred by the district court case arising from the same incident, and that a police officer is not permitted to arrest a citizen for refusing to provide identification. After hearing evidence and argument regarding these allegations, the trial court denied Fluker's motion and the case proceeded to trial.

Fluker represented herself at trial. Officer Martin, Sergeant Vogel, and the officer in charge, Sergeant Joshua Davis testified. They also viewed footage of the incident from Officer Martin's body-worn camera. After brief deliberations, the jury returned a guilty verdict as to both counts. Fluker was sentenced as noted above. This appeal as of right followed.

## II. FLUKER FAILS TO SHOW THAT PERJURED TESTIMONY AND FALSE REPORTS WERE INTRODUCED AT TRIAL

Fluker, who is representing herself in this appeal, argues that the law enforcement officials involved in her case perjured themselves and authored false reports, which violated her due-process rights. While both issues were functionally abandoned due the lack of factual and record support in the briefing, we do our best to address why each issue is also without merit.

## A. ISSUE PRESERVATION AND STANDARD OF REVIEW

"A due-process violation presents a constitutional question that this Court reviews de novo." *People v Brown*, 506 Mich 440, 446; 958 NW2d 60 (2020). However, "[u]npreserved issues are reviewed for plain error affecting substantial rights." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).[1] To establish that a claim of error warrants reversal under the plain-error standard, the following four elements must be met:

> First, there must have been an error. Deviation from a legal rule is "error" unless the rule has been waived. Second, the error must be plain, meaning clear or obvious. Third, the error must have affected substantial rights. This generally

---

[1] As an initial matter, "[t]o preserve an evidentiary issue for appellate review, a party must object timely at trial and specify the same ground for objection as is asserted on appeal." *People v Considine*, 196 Mich App 160, 162; 492 NW2d 465 (1992). Additionally, when a defendant alleges that a prosecutor committed misconduct by knowingly using perjured testimony, "a defendant must contemporaneously object and request a curative instruction" in order to preserve the issue for appellate review. *Bennett*, 290 Mich App at 475. Here, Fluker raised the issues of perjury and false reports in various pretrial and posttrial filings. However, when the disputed testimony was elicited at trial, she did not object to the testimony or request a curative instruction. Even if this Court were to review this argument as preserved, the outcome would be the same considering lack of record support underlying Fluker's claim.

requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. The defendant bears the burden of establishing prejudice. Fourth, if the first three requirements are met, reversal is only warranted if the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings. [*People v Shafier*, 483 Mich 205, 219-220; 768 NW2d 305 (2009) (quotation marks and citations omitted).]

## B. ANALYSIS

Fluker argues that she was convicted after perjured testimony was used at her jury trial. "If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *People v Bass*, 317 Mich App 241, 272; 893 NW2d 140 (2016) (citation and quotation marks omitted). But here, Fluker does not explain what testimony allegedly constituted perjury. From what we can gather from the record, Fluker thought Martin had been disciplined previously for not calling a supervisor when interacting with a sovereign citizen. Martin denied that at trial, which Fluker believes amounts to perjury. Fluker said there was proof in the longer version of the body camera footage—the one-hour full video as opposed to the just under 9-minute video submitted at trial. But Fluker's pleading quotes from the body worn camera footage, wherein Martin allegedly says he "got yelled at" the last time he "didn't wait for supervisor." This is distinct from getting into trouble or being officially disciplined. Thus, the inconsistency between what Officer Martin said on the stand and what he may or may not have said in the body-worn camera footage, if any, does not itself establish that the prosecutor knowingly used perjured testimony to obtain Fluker's conviction. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). See also *Bass*, 317 Mich App at 275 (holding that a prior inconsistent statement is not determinative proof of perjury or falsity).

Even if Fluker had established that Officer Martin committed perjury on the stand and that the prosecution knowingly used the perjured testimony or failed to correct it (which she has not), she also has not shown that she would be entitled to relief on this basis. Fluker is entitled to a new trial when the prosecution knowingly used perjured testimony if "the tainted evidence is material to the defendant's guilt or punishment." *Bass*, 317 Mich App at 273 (quotation marks and citations omitted). Here, however, the allegedly perjured testimony had no bearing on the outcome of the case. Officer Martin's previous interaction with a sovereign citizen and whether he was "yelled at" for failing to call a supervisor to the scene of a prior interaction was not relevant to the jury's consideration of whether Fluker was guilty of resisting or obstructing Officer Martin and Sergeant Vogel. At best, this evidence would have undercut Officer Martin's credibility as a trial witness. But that would not have been outcome-determinative in the present case because all of the relevant events were captured on camera and the video was played for the jury.

Fluker also argues that "the Officer in Charge, Joshua Davis, admitted under oath that he authored false police reports in relation to this case." Fluker's appellate briefs do not articulate her argument as to what false reports Sergeant Davis was alleged to have authored, nor does she provide support for her argument that the trial court's failure to address these inaccuracies violated her right to a fair trial.

From what this Court can gather, Fluker takes issue with Sergeant Davis's handwritten notation on her Constitutional Rights Certificate of Notification that "[Fluker] was not interrogated. She claims to be a sovereign citizen and resists/obstructs officer." At trial, Fluker questioned Sergeant Davis about his statement that she claimed to be a sovereign citizen, and he admitted that he never spoke to her personally. He further admitted that he was relying on information he received from other officers when he filled out the form.

On this record, Sergeant Davis's statement that he did not interrogate Fluker because she claimed to be a sovereign citizen did not so infect the proceedings as to compromise Fluker's right to a fair trial. First, the jury was aware of the relevant facts from Fluker's cross-examination of Sergeant Davis about the potential misstatements and his lack of personal knowledge as to whether she claimed to be a sovereign citizen. In response to the prosecution's objection, the court even noted on the record that Sergeant Davis "never spoke to [Fluker] so the issue is he received this information from somebody else. That would be hearsay." Thus, to the extent that Fluker was attempting to prove that Sergeant Davis lied on the Constitutional Rights Certificate of Notification when he said she claimed to be a sovereign citizen, the jury had all the information they would have needed to reach that conclusion.

Second, Fluker has not offered any evidence that Sergeant Davis knowingly "authored false reports" when he concluded, after reading the police reports describing the circumstances of her arrest, that she claimed to be a sovereign citizen. As he testified on the stand, officers are able to infer from a person's behavior that they are a sovereign citizen when they say they have the right to travel and do not have a license, insurance, or registration for their vehicle. But finally, and most crucially, Fluker cannot demonstrate that this issue deprived her of a fair trial because it had no bearing on the jury's consideration of whether she was guilty of the charged offenses. *Bass*, 317 Mich App at 272-273. In the end, Fluker has not shown that the alleged "false report" authored by Sergeant Davis deprived her of a fair trial.

### III. FLUKER FAILS TO SHOW ANY VIOLATION OF HER FIFTH AMENDMENT RIGHTS

Fluker next alleges that the dismissal of the charges in the 36th District Court bars this case because the subsequent prosecution violates the Fifth Amendment's protection against double jeopardy. We disagree.

### A. LEGAL BACKGROUND

A double-jeopardy challenge presents a constitutional issue which this Court reviews de novo. *People v Lett*, 466 Mich 206, 212; 644 NW2d 743 (2002). The Double Jeopardy Clauses of the United States and Michigan Constitutions protect an accused from being put in jeopardy twice for the same offense. See US Const, Am V; Const 1963, art 1, § 15. "The Double Jeopardy Clause of the Fifth Amendment protects against two general governmental abuses: (1) multiple *prosecutions* for the same offense after an acquittal or conviction; and (2) multiple *punishments* for the same offense." *People v Grace*, 258 Mich App 274, 279; 671 NW2d 554 (2003) (citations and quotation marks omitted).

## B. ANALYSIS

Fluker argues that the prosecution's decision to pursue the instant charges after the citations in the 36th District Court were dismissed runs afoul of the prohibition on double jeopardy. However, the register of actions in the 36th District Court case reveals that although the case was set for trial, the trial did not take place, and the charges were subsequently dismissed without prejudice at a pretrial hearing. In fact, the register of actions indicates that the citation for disobeying an officer's order was dismissed without prejudice because there was a pending circuit court case arising out of the same incident.

Fluker implicitly acknowledged that jeopardy did not attach in the district court proceedings because she explained, in response to the trial court's questioning, that the district court case was dismissed without prejudice:

> *The Court*: Was it without prejudice?
>
> *Fluker*: That was because the Judge told me that he could not dismiss it with prejudice because he wasn't allowed to hear evidence. We were in a pretrial setting, your Honor, so he told me that he would dismiss it but he could not legally dismiss it without—with prejudice because he wasn't allowed to hear the evidence.

From the record before this Court, as illustrated by the particular excerpt above, it appears that a bench, not jury, trial was going to be conducted in the district court and was not. The district court judge made clear he "wasn't allowed to hear evidence." In a bench trial, "jeopardy attaches once the court begins to hear evidence." *People v Robbins*, 223 Mich App 355, 362; 566 NW2d 49 (1997). However, when an accused is discharged after a preliminary examination, the prohibition on double jeopardy "is not a bar to his subsequent arrest, examination, and trial for the same offense because he has not been placed in jeopardy." *Id.* (citation and quotation marks omitted). Because Fluker was not placed in jeopardy, the constitutional prohibitions on double jeopardy do not bar her subsequent prosecution arising out of the same incident. *Robbins*, 223 Mich App at 362. Accordingly, Fluker has not demonstrated that she is entitled to relief on this basis.

## IV. FLUKER FAILS TO ESTABLISH ANY VIOLATION OF RIGHTS BASED ON EVIDENTIARY DELAYS

Fluker argues that the prosecution's failure to produce evidence within 21 days as required by MCR 6.201(F) "severely impeded" her ability to prepare for trial. She also alleges that the delay violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). We disagree.

## A. LEGAL BACKGROUND

This Court reviews due process claims, including allegations of a *Brady* violation, de novo. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016). "A trial court's decision regarding discovery is reviewed for abuse of discretion." *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). Likewise, trial courts have discretion to implement remedies for discovery violations, and this Court will review the trial court's decisions regarding the appropriate remedy for noncompliance with a discovery order for an abuse of discretion. *People v Rose*, 289 Mich

App 499, 525; 808 NW2d 301 (2010).  Under Michigan law, "[t]here is no general constitutional right to discovery in a criminal case." *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000). Rather, discovery in criminal cases is governed by the reciprocal criminal discovery rule set forth in MCR 6.201.  *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 447; 722 NW2d 254 (2006).

Although a criminal defendant does not have a constitutional right to discovery, "a defendant's right to due process may be violated by the prosecution's failure to produce exculpatory evidence in its possession." *People v Burger*, 331 Mich App 504, 518; 953 NW2d 424 (2020) (quotation marks and citation omitted).

## B.  ANALYSIS

Fluker contends that the prosecution's failure to provide her with certain evidence until one month before trial impeded her ability to prepare for trial.  Accordingly, Fluker is not asserting that the prosecution completely withheld the evidence, but merely that the delay in producing it was problematic.

Under *Brady*, when a defendant alleges a delayed disclosure of evidence but not a total deprivation of that evidence, no violation of the defendant's rights occurs unless the defendant has been prejudiced by that delay in disclosure.  *People v Fox*, 232 Mich App 541, 549; 591 NW2d 384 (1999).

In this case, Fluker fails to establish prejudice from the prosecution's alleged untimely disclosure.  She has not shown what she would have done differently if she was given the evidence earlier, nor has she demonstrated that if she was given the evidence earlier, the outcome of the trial would have been different.  In fact, Fluker provides no information about the contents of the untimely disclosed evidence.  When an opposing party delays in disclosing evidence, one of the key inquiries is "whether the party's interest in preparing his own case or his opportunity to test the authenticity of his opponent's evidence has been prejudiced" by the delay in disclosure. *People v Taylor*, 159 Mich App 487, 484; 406 NW2d 859 (1987).  Here, Officer Martin's body-worn camera footage was provided to Fluker on March 8, 2024.  This was over a month before trial began.

Fluker has not demonstrated that the prosecution's delay in providing additional body-worn camera footage from officers at the scene who did not testify at trial or the video of her being transported to jail until several weeks before trial began inhibited her ability to prepare for trial. This footage would have necessarily shown the same events as Officer Martin's body-worn camera footage, albeit from different angles.  Because Fluker has not demonstrated prejudice, she is not entitled to relief on this basis.

## V.  FLUKER FAILS TO ESTABLISH ANY LEGAL CLAIM REGARDING HER ACCESS TO TRANSCRIPTS

Fluker alleges that she was denied access to critical transcripts which were necessary for trial preparation and her appeal.  Given that Fluker now has access to the transcripts, this issue appears to be moot.  See *People v Kruper*, 340 Mich 114, 117; 64 NW2d 629 (1954) (holding that

the defendants' due-process arguments related to missing trial testimony were moot after a supplemental record containing the missing testimony was filed before the appeal was argued). Regardless, the relevant court rules appear to have been followed, and thus Fluker's due process rights were fairly protected.

MCR 7.210(B), which governs the production of transcripts in an appeal to this Court, provides that the appellant, here Fluker, "is responsible for securing the filing of the transcript as provided in this rule." The rule further provides that the appellant "must order from the court reporter or recorder the full transcript of testimony and other proceedings in the trial court or tribunal." MCR 7.210(B)(1)(a). After an appellant orders the transcript, the court reporter must file the transcript within 91 days in criminal cases wherein a conviction was obtained following a jury trial. MCR 7.210(B)(3)(b)(iv).

Here, the record reflects that Fluker ordered the trial transcripts from the court reporter in connection with this appeal on February 24, 2025. The record further reflects that the court reporter filed the transcripts with the Wayne County Clerk for all pretrial hearings, the jury trial, and Fluker's sentencing on May 15, 2025. This is well within the timelines provided in MCR 7.210. Consequently, this Court is not able to discern from Fluker's briefing what due-process violation she is alleging.

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young