NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0065n.06

No. 19-1079

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jan 29, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| BRYANT OKEFF LEGGETT, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

Before: ROGERS, KETHLEDGE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Bryant Leggett pleaded guilty to possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(b)(1)(C). The district court sentenced him to 144 months' imprisonment. Leggett challenges that sentence on appeal. For the reasons that follow, we AFFIRM.

I.

In June of 2018, a grand jury indicted Leggett on seven counts of distribution of heroin and one count of possession of heroin with intent to distribute—all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). The indictment followed an investigation begun by a local drug task force in 2017. During its investigation, the task force made seven controlled purchases of heroin from Leggett and seized five grams of heroin from his car.

Leggett pleaded guilty to one count of knowingly and intentionally possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(b)(1)(C). His written plea agreement stipulated

that the five grams of heroin seized from his car belonged to him and that he had intended to distribute that heroin to others for profit. In exchange for his plea, the government dismissed the distribution charges.

The presentence report (PSR) calculated Leggett's Guideline range as 188 to 235 months. That range was based, in part, on two factual issues relevant to this appeal. First, the PSR found Leggett responsible for the distribution of 1.08 kilograms of heroin. Second, the PSR found that Leggett had maintained a drug house, subjecting him to a two-level enhancement under U.S.S.G. § 2D1.1(b)(12). Leggett objected to both the drug-quantity finding and the application of the drug-house enhancement.

At sentencing, the district court heard testimony on these issues. The government called Nakaleff Love. Although he gave different accounts, Love ultimately testified that he had purchased approximately eight-to-ten grams of heroin from Leggett each week for over six months. The district court credited this testimony, finding that Leggett had distributed at least 272 grams of heroin to Love. Based on additional allegations in the PSR, the district court also found that Leggett had received more than 129 grams of heroin from another individual, Dion Branch. Accordingly, the district court attributed more than 401 grams of heroin to Leggett when calculating his offense level, an amount that was less than half of the 1.08 kilograms attributed to Leggett by the PSR.

The government also called Marcel Behnen—an investigator on the task force. He testified that the task force had connected Leggett to the distribution of heroin at three properties. Specifically, he explained that the task force had found heroin stored in a make-shift storage container inside a fence post outside a house frequented by Leggett on North Rose Street; that a similar make-shift container had been found in a fence post outside Leggett's home on Cobb

Avenue; and that a confidential informant had purchased heroin at another house associated with Leggett on West Prouty Street. In addition, the PSR alleged that a scale, packaging material, three cell phones, and $700 in cash had been found inside Leggett's home upon his arrest. Based on Behnen's testimony and the allegations in the PSR, the district court found that Leggett had maintained a drug house within the meaning of U.S.S.G. § 2D1.1(b)(12).

These findings resulted in a Guideline range of 110 to 137 months. The district court then considered the sentencing factors prescribed by 18 U.S.C. § 3353(a). Because Leggett's extensive criminal history rendered him a "major risk to the public," the district court concluded that an upward variance was needed to sufficiently deter Leggett from future drug activity. It therefore adjusted Leggett's Guideline range upward to 120 to 150 months and sentenced him to serve 144 months in prison. This appeal followed.

## II.

Leggett raises three challenges to his sentence. First, he argues that the district court should not have applied the drug-house enhancement. Second, he contends that the district court relied on insufficient evidence to attribute 401 grams of heroin to him. Finally, he claims that the district court's upward variance was procedurally and substantively unreasonable. All three challenges lack merit.

## A.

We review the district court's interpretation of the Guidelines de novo. *See United States v. Davison*, 409 F.3d 304, 310 (6th Cir. 2005). We accept the district court's factual findings, unless they are clearly erroneous. *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008). Clear error exists only when, after reviewing all the evidence, "we are left with the definite and firm conviction that a mistake has been made." *Id.* We give great deference to the district court's

witness-credibility determinations. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012). "[W]here there are two permissible views of the evidence," we cannot conclude that the district court committed clear error, "even if we would have weighed the evidence differently." *Id.* (citation omitted).

B.

We begin with the drug-house enhancement. The Guidelines direct sentencing courts to apply a two-level enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). Leggett argues that there was insufficient evidence to justify this enhancement. We disagree.

The drug-house enhancement applies to "anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). "If the defendant lives in the house, the maintaining-a-place element is normally easily proved." *Id.* (quotation marks and alteration omitted). Here, Leggett lived at the house on Cobb Avenue. The district court, therefore, did not err by finding that Leggett had maintained that premises within the meaning of § 2D1.1(b)(12).

Leggett contends that the distribution of drugs was not "the primary purpose" of his Cobb Avenue residence. But a defendant "may qualify for the drug house enhancement so long as '*one of* [his] primary or principal uses for the premises' is the distribution of drugs." *Johnson*, 737 F.3d at 447 (alteration in original) (quoting U.S.S.G. § 2D1.1 cmt. n.17). This is a relatively low bar: "[d]rug storage on the property and transactions on the property will usually suffice." *United States v. Bell*, 766 F.3d 634, 638 (6th Cir. 2014). "At bottom, the question is whether [Leggett's] home 'played a significant part' in distributing drugs." *Id.* at 637 (quoting *Johnson*, 737 F.3d at 449).

Leggett was arrested after he arrived at his Cobb Avenue home, where officers were executing a search warrant; the officers discovered five grams of heroin in his car. On the property, officers found a make-shift storage container inside a fence post that was similar to the heroin-filled container previously found inside a fence post at another property associated with Leggett. This evidence suggests that Leggett used the Cobb Avenue property for both "storage" and "transactions." *Id.* at 638. Inside the home, officers found a scale, packaging material, three cell phones, and $700 in cash. Such "tools of the trade" further indicate that Leggett used the property for drug distribution. *See Johnson*, 737 F.3d at 448. Thus, the evidence pertaining to the Cobb Avenue residence alone was sufficient to support the application of the drug-house enhancement to Leggett. We need not consider the other two properties.

## C.

Leggett next disputes the district court's drug-quantity determination. Drug-quantity findings must be supported by a preponderance of the evidence. *United States v. Walton*, 908 F.2d 1289, 1301–02 (6th Cir. 1990). Leggett argues that the evidence supporting the district court's finding that he had distributed at least 272 grams of heroin to Love falls short. Leggett points out that Love, who suffers from schizophrenia and bipolar disorder, had not taken his medication for over a month prior to his testimony. Both parties acknowledged this fact, and defense counsel explored this topic during cross-examination. The district court judge, who had the opportunity to observe Love's testimony, nonetheless credited it; we are in no position to second-guess the district court's judgment on whether Love was to be believed. *See Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001) ("We are generally reluctant to set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness on the stand and assess his demeanor.").

Leggett also points to inconsistencies in Love's testimony, which ranged from meeting Leggett only once, to "a few times," to "once a week" for more than six months. Leggett asserts that "Mr. Love's story changed every time he answered a question;" therefore, Leggett argues, the district court clearly erred by relying on it. Our standard of review forecloses this claim. A district court's drug-quantity determination is a finding of fact "which must be accepted . . . unless clearly erroneous." *Walton*, 908 F.2d at 1300–01. Consequently, we will not disturb a drug-quantity finding "if it is supported by competent evidence in the record." *Jeross*, 521 F.3d at 570. Testimonial evidence from a co-conspirator is sufficient. *Id.* And when assessing such testimony, "[w]e afford the district court's credibility determinations . . . great deference." *Id.*

The district court credited Love's testimony that he had received eight-to-ten grams of heroin per week from Leggett for more than six months. Although Love's testimony could also be interpreted to support a much smaller quantity, we may not substitute our judgment for that of the district court. *See United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003) ("If the district court interprets the evidence in a manner consistent with the record, we are required to uphold its decision even if we would have reached the opposite conclusion."). Because the district court's finding that Leggett had distributed 272 grams of heroin to Love is supported by the record, Leggett's claim fails.

## D.

Finally, Leggett challenges the reasonableness of his sentence. Although he styles his argument as sounding in both substantive and procedural reasonableness, in reality, his argument goes only to the latter. Leggett contends that the district court varied upward based on a false finding that Leggett "took advantage" of Love. In other words, he claims that the district court selected his sentence "based on clearly erroneous facts." *See Gall v. United States*, 552 U.S. 38,

51 (2007). That is an argument about procedural, not substantive, error. *See id.* And because Leggett did not raise this objection at sentencing, we review this claim only for plain error. *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). We may reverse for plain error "only in exceptional circumstances and only where the error is so plain that the trial judge . . . [was] derelict in countenancing it." *United States v. Fuller-Ragland*, 931 F.3d 456, 459 (6th Cir. 2019) (alterations in original). To prevail, Leggett bears the burden of showing "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386 (quotation marks omitted).

Here, the very premise of Leggett's argument lacks factual support. The district court explained its upward variance at length, citing "the seriousness of dealing . . . heroin" and the need to "specifically deter[]" Leggett because his extensive criminal history, and his failure to avail himself of prior opportunities for reform, rendered him a "major risk to the public." Although the court briefly mentioned its belief that "[d]rug dealers like Mr. Leggett . . . take advantage of people like Mr. Love," whom the court described as "very troubled" and lacking in resources, that sentiment cannot fairly be said to have formed the basis of the upward variance. At the very least, Leggett has not shown (or even attempted to show) that, absent this "error," the court would not have varied upward. As such, Leggett cannot demonstrate any effect on his "substantial rights" or on the "fairness, integrity, or public reputation of the judicial proceedings." *See Vonner* 516 F.3d at 386 (citation omitted). Accordingly, Leggett's challenge to the district court's upward variance fails.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of the district court.