**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0641n.06

Case No. 19-4224

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ALTIN BASHKIM SHUTI, | ) | **FILED**<br>Nov 12, 2020<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Petitioner, | ) |  |
|  | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE BOARD OF |
|  | ) | IMMIGRATION APPEALS |
| WILLIAM P. BARR, Attorney General, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

BEFORE: BOGGS, STRANCH, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. After Altin Shuti committed unarmed robbery, the Department of Homeland Security moved to deport him. Shuti objected, arguing that his crime doesn't qualify for removal and that he would be persecuted if deported to Albania. The Board of Immigration Appeals rejected Shuti's claims. Because unarmed robbery (as Michigan defines it) is a crime of violence, and because Shuti did not establish that he is more likely than not to be persecuted in Albania, we deny the petition for review.

I.

Altin Shuti is an Albanian citizen. When he was thirteen, his family fled to the United States because they feared persecution by the Socialist Party of Albania, which had placed Shuti's father in a forced labor camp. Shuti became a lawful permanent resident and his parents became

United States citizens. But six years later, Shuti pled guilty to unarmed robbery, and the Department of Homeland Security moved to deport him.

The Department of Homeland Security notified Shuti that he was removable because his Michigan unarmed robbery conviction was a "crime of violence" as defined by 18 U.S.C. § 16. Shuti agreed and conceded that he was removable.

But Shuti's case didn't end there. Shuti claimed that he would be persecuted in Albania and applied for relief under the Immigration and Nationality Act and the Convention Against Torture. The agency denied his request.

So Shuti changed his approach and argued on appeal that he was not removable. There were two statutory definitions of a "crime of violence," and Shuti claimed that one of the two was unconstitutional. *See* 18 U.S.C. § 16; *id.* § 16(b). Our court agreed: We remanded to the Board of Immigration Appeals for further proceedings. *Shuti v. Lynch*, 828 F.3d 440, 451 (6th Cir. 2016) (*Shuti I*).

On remand, the agency held that Shuti's conviction still qualified under the unchallenged definition of a "crime of violence," 18 U.S.C. § 16(a). The agency also affirmed the denial of Shuti's request for relief under the Immigration and Nationality Act and the Convention Against Torture.

Shuti now petitions for review and argues that the agency erred by: (1) holding that his unarmed robbery conviction is a "crime of violence," (2) denying him relief under the Immigration and Nationality Act and the Convention Against Torture, and (3) denying his request to remand for additional factfinding. None of these arguments is persuasive, so we deny the petition for review.

II.

Shuti's first argument is that the agency erred by holding that his unarmed robbery conviction is a "crime of violence." We review the agency's decision de novo. *See Van Don Nguyen v. Holder*, 571 F.3d 524, 528 (6th Cir. 2009).

A lawful permanent resident is removable if he has been convicted of a "crime of violence." A "crime of violence" is defined as "an offense that has as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. § 16(a); *see also* 8 U.S.C. §§ 1227(a)(2)(A)(iii) (allowing removal for aggravated felonies), 1101(a)(43)(F) (defining aggravated felonies to include crimes of violence).

To determine whether Shuti's unarmed robbery conviction is a "crime of violence," we apply what is known as the categorical approach. We focus solely on the elements of the crime and ask they "fit[] within the 'generic' federal definition of a corresponding aggravated felony." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). We also ask whether there is a realistic probability that an individual could be prosecuted without using, attempting to use, or threatening to use physical force. *Id.* at 190–91; *see Lowe v. United States*, 920 F.3d 414, 420 (6th Cir. 2019) (Thapar, J., concurring) ("[W]e must engage in a hypothetical exercise to determine whether the crime's elements could be committed in a non-violent fashion."). If so, the offense doesn't count as a "crime of violence."

In Shuti's case, we don't have to start our analysis from scratch. We recently determined that Michigan unarmed robbery qualifies as a "crime of violence" under § 4B1.2(a)(1) of the Sentencing Guidelines. *United States v. Fuller-Ragland*, 931 F.3d 456, 465 (6th Cir. 2019). The Sentencing Guidelines and the provision here share almost identical definitions of a "crime of violence." *Compare* 18 U.S.C. § 16(a) ("an offense that has as an element the use, attempted use,

or threatened use of physical force against the person or property of another"), *with* U.S.S.G. § 4B1.2(a)(1) ("any offense . . . [that] has as an element the use, attempted use, or threatened use of physical force against the person of another"). In fact, we have often used one to help interpret the other. *United States v. Verwiebe*, 874 F.3d 258, 263–64 (6th Cir. 2017); *see Hernandez-Maldonado v. Barr*, 773 F. App'x 280, 282 (6th Cir. 2019) (recognizing that because 18 U.S.C. § 16(a) "mirrors" § 4B1.2(a)(1) of the Sentencing Guidelines, the clauses are often read "the same way" (quoting *Verwiebe*, 874 F.3d at 260)). Given the near-identical definitions, our analysis under the Sentencing Guidelines that Michigan unarmed robbery is a "crime of violence" applies here. Thus, the agency did not err in finding that Shuti had committed a "crime of violence."

Shuti's arguments to the contrary are unpersuasive. He contends that unarmed robbery does not have an element of physical force because it includes offenses such as assault, which can be carried out with barely any force (like spitting). But our job is not to "imagin[e] unlikely crimes that theoretically could be covered" by Michigan's unarmed robbery statute; rather, there must be a "realistic probability the statute would be used to criminalize the conduct." *Verwiebe*, 874 F.3d at 260–61. Although "Michigan courts have made it clear that actual force is not necessary to commit a robbery," unarmed robbery does include the threatened use "of at least enough force to overcome a victim's resistance." *Fuller-Ragland*, 931 F.3d at 462 n.5, 464–65. And under *Stokeling v. United States*, "force necessary to overcome a victim's resistance" qualifies as "physical force." 139 S. Ct. 544, 555 (2019).

Shuti also raises procedural objections. He says that res judicata and waiver bar the agency from arguing he's removable for committing a "crime of violence." But neither doctrine applies here.

*Res Judicata*. Shuti contends that res judicata bars the agency from arguing that he is removable after we vacated the first removal order in *Shuti I*. Res judicata prevents parties from relitigating claims that have already been determined by a final judgment. *See Arangure v. Whitaker*, 911 F.3d 333, 337 (6th Cir. 2018). But *Shuti I* did not render a final judgment on Shuti's removability: Our review was limited to whether *one* of the two definitions of a "crime of violence" was unconstitutional. We did not terminate Shuti's removal proceedings. Nor did we decide whether Shuti was removable on other grounds. We merely vacated the prior judgment for the Board of Immigration Appeals and directed it to conduct "further proceedings consistent with [our] opinion." *Shuti I*, 828 F.3d at 441, 451. Because there has been no final judgment, res judicata does not apply.

*Waiver*. Shuti argues the agency waived its argument that he committed a "crime of violence." Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). And to be sure, the agency did not specify which of the two definitions of a "crime of violence" applied to Shuti until after we decided *Shuti I*. But that's because it had no reason to. The entire removal proceeding had been predicated on the idea that Shuti was removable under either or both definitions of a "crime of violence." When the Department of Homeland Security initiated removal, it notified Shuti that he was removable because he had committed a "crime of violence." Then Shuti himself conceded that he was removable. *Twice*. It was only after we found one definition of a "crime of violence" unconstitutional that there was an open question about whether Shuti's conviction still qualified under the other definition.

Shuti insists the agency knew before *Shuti I* that one of the definitions for a "crime of violence" may have been unconstitutional because the Supreme Court had decided that an analogous clause in a different statute was unconstitutional. *See Johnson v. United States*, 576 U.S. 591, 606 (2015) (holding 18 U.S.C. § 924(e)(2)(B) unconstitutional). But we do not fault the agency for failing to predict if, and how, a given circuit will extend Supreme Court precedent. The agency has consistently maintained that Shuti is removable for committing a "crime of violence." So waiver does not apply.

III.

Next, Shuti claims that the agency erred by denying him relief under the Immigration and Nationality Act (INA) and the Convention Against Torture (CAT). The INA and CAT offer relief to noncitizens who show they would probably be persecuted if returned to their country of origin. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(c). But there are limitations: If a noncitizen has committed a "particularly serious" crime, the INA offers no relief and the CAT offers only deferral of removal. *See* 8 U.S.C. § 1231(b)(3)(B)(iv); 8 C.F.R. § 1208.16(d)(2). The agency held that Shuti's crime was "particularly serious," so Shuti's only remaining option was to apply for deferral of removal under the CAT.

While Shuti may be *eligible* for relief under the CAT, that does not mean he is *entitled* to it. An eligible noncitizen must still prove "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *see id.* § 1208.17(a). Shuti alleges that he will be physically tortured by the Socialist Party of Albania.[1] But the agency determined that Shuti's testimony was not credible and denied deferral of removal.

---

[1] Shuti also claims he will be barred from attending college. Even if Shuti's claim is true, it does not qualify as torture, which is defined as "severe pain or suffering." 8 C.F.R. § 1208.18(a)(1); *see Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006).

Shuti challenges the agency's rulings that his crime was "particularly serious" and that he failed to establish a clear probability of torture in Albania. Since the Board of Immigration Appeals adopted the immigration judge's decision, we review both decisions. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). When reviewing the agency's factual determinations, we use the "'highly deferential' substantial-evidence test, meaning those findings stand 'unless any reasonable adjudicator would be compelled' to disagree." *Kilic v. Barr*, 965 F.3d 469, 473 (6th Cir. 2020) (quoting *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020)). And we review the agency's legal conclusions de novo. *Id.*

*"Particularly Serious" Determination.* Shuti first argues that the agency should have used the categorical and modified categorical approach to determine whether his crime was "particularly serious." But the only cases Shuti cites for support address the standards for "aggravated" or "violent" felonies. And Shuti does not explain why this caselaw—wrested from different contexts—would bind our analysis about whether a crime is "particularly serious." *See In re N-A-M-*, 24 I. & N. Dec. 336, 344 (BIA 2007) ("[No] decision of which we are aware, has ever suggested that the categorical approach . . . is applicable to the inherently discretionary determination of whether a conviction is for a particularly serious crime.").

Shuti next challenges the evidence the agency reviewed to determine whether his crime is "particularly serious." Shuti concedes the agency could consider any reliable evidence. But he says the agency should not have considered his dismissed or uncharged conduct or the conduct of other defendants. Except Shuti never explains *why* dismissed or uncharged conduct is categorically unreliable. Nor does he provide any relevant authority to support his claim. So Shuti forfeited this argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is

not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (cleaned up)).

*Deferral of Removal Determination.*   Shuti argues the agency erred by rejecting as not credible his testimony that he will face persecution if deported to Albania.

To prove he will be tortured in Albania, Shuti offers evidence of past mistreatment by the Socialist Party of Albania.  At his removal hearing, he testified that when he was eight years old Socialist Party members threatened to kill him and his family.  The problem for Shuti is that his story was disputed by his own witness:  his father.  At the same removal hearing, Shuti's father testified that Shuti himself was never threatened or subjected to any mistreatment while in Albania.  Given the contradicting stories—and the lack of independent evidence corroborating Shuti's memories as an eight-year-old—we are not "compelled to disagree" with the agency's finding that Shuti's testimony was not credible.  *Kilic*, 965 F.3d at 473 (cleaned up).

Shuti also points to his family history, asserting that the Socialist Party of Albania had persecuted his relatives in the past.  He also notes a 2013 State Department report on Albania, which references police beatings and corruption.  But Shuti offers no credible evidence that *Shuti himself* is likely to be tortured in *present-day* Albania.  *See id.* at 474.

Shuti argues the agency failed to consider the totality of the circumstances and erred by requesting corroborating evidence without sufficient notice.  Both arguments are meritless.  First, Shuti argues the agency should have considered evidence of conditions in Albania and Shuti's age when he was allegedly threatened.  But the immigration judge explicitly referenced both factors in its decision.  The immigration judge even determined that conditions in Albania had improved markedly from Shuti's childhood.  Second, as Shuti acknowledges, we have already determined that "federal law does not entitle illegal aliens to notice from the Immigration Court as to what sort

of evidence the alien must produce to carry his burden." *Gaye v. Lynch*, 788 F.3d 519, 530 (6th Cir. 2015). So precedent forecloses this argument.

For all these reasons, the agency did not err in denying Shuti deferral of removal.

IV.

Shuti's third and final argument is that the agency erred by denying his request to remand for additional factfinding. We review the agency's decision for abuse of discretion. *Marqus v. Barr*, 968 F.3d 583, 592 (6th Cir. 2020).

A motion to remand is granted only where the "evidence sought to be offered is material and was not available and could not have been discovered or presented at the [evidentiary] hearing." *Shakkuri v. Barr*, 780 F. App'x 286, 294 (6th Cir. 2019) (brackets in original). Shuti argues remand is warranted here because conditions in Albania have changed since the agency denied deferral of removal in 2015. But the only evidence Shuti provides is a report showing that government officials sometimes mistreat suspects and prisoners. Shuti submitted nearly identical information about police misconduct at his initial removal hearing. Thus, Shuti provides no new, material evidence for consideration. *See Shakkuri*, 780 F. App'x at 294–95. The agency did not abuse its discretion by denying remand.

We deny the petition for review.